UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LIONEL ROBINSON,

     Petitioner,

v.                              Case No.  1:17cv198-MW-CJK

JULIE L. JONES,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent moves to dismiss the petition as time-barred, providing relevant portions of the state court record.  (Doc. 22).  Petitioner opposes the motion.  (Doc. 28).  The matter is referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that petitioner's habeas petition should be dismissed as time-barred.

BACKGROUND FACTS AND PROCEDURAL HISTORY

On May 3, 2012, a Florida jury found petitioner guilty of robbery with a firearm and tampering with evidence in Alachua County Circuit Court Case No. 2010-CF-4836. (Doc. 22, Ex. A). The trial court adjudicated petitioner guilty and sentenced him to 30 years in prison for the robbery and 5 years in prison for the evidence tampering. (Doc. 1, p. 1). On October 17, 2013, the Florida First District Court of Appeal (First DCA) affirmed the judgment per curiam without opinion. *Robinson v. State*, 123 So. 3d 565 (Fla. 1st DCA 2012) (Table) (copy at Doc. 22, Ex. B).

On November 24, 2014, petitioner, through counsel, filed a state habeas petition in the First DCA alleging ineffective assistance of appellate counsel. (Doc. 22, Ex. C). The First DCA denied the petition on the merits on December 10, 2014. *Robinson v. State*, 152 So. 3d 571 (Fla. 1st DCA 2014) (Table) (copy at Doc. 22, Ex. D). Petitioner did not move for rehearing.

On February 12, 2015, petitioner, through counsel, filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended on July 24, 2015. (Doc. 22, Ex. E, pp. 1-24 (original motion), pp. 25-52 (amended motion)). On July 24, 2015, the state court dismissed the motions as procedurally deficient because they failed to comply with Rule 3.850(c)'s oath

requirement.  (Doc. 22, Ex. E, pp. 53-54).   The dismissal was without prejudice to petitioner filing an amended, verified motion within sixty days.   Petitioner filed a second amended motion containing the requisite verification, (doc. 22, Ex. E, pp. 65-91), which was denied on the merits.  (Doc. 22, Ex. E, pp. 94-233).   The First DCA summarily affirmed, with the mandate issuing April 18, 2017.   *Robinson v. State*, 230 So. 3d 437 (Fla. 1st DCA 2017) (Table) (copy at Doc. 22, Ex. G).

Petitioner filed his *pro se* federal habeas petition on July 31, 2017.  (Doc. 1). Respondent asserts the petition is time-barred.  (Doc. 22).  Petitioner concedes his petition is untimely, but argues he is entitled to equitable tolling.  (Doc. 1; Doc. 28).

DISCUSSION

Timeliness

Because petitioner filed his § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs this petition.  *Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).  The AEDPA establishes a 1-year period of limitation for a state prisoner to file a federal application for a writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  The limitations period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1).  The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending.  28 U.S.C. § 2244(d)(2).

Petitioner has not asserted that a State-created impediment to his filing a federal habeas petition existed, that he bases his claim on a right newly recognized by the United States Supreme Court, or that the facts supporting his claims could not have been discovered through the exercise of due diligence before his judgment became final.  Accordingly, the statute of limitations is measured from the remaining trigger, which is the date on which petitioner's judgment became final.  *See* 28 U.S.C. § 2244(d)(1).

Petitioner's judgment became final for purposes of § 2244(d), on January 15, 2014, which is ninety days after the First DCA's October 17, 2013, affirmance of

the judgment.  *See* 28 U.S.C. § 2244(d)(1); *Bond v. Moor*e, 309 F.3d 770, 773 (11th Cir. 2002) (holding that the statute of limitations under § 2244(d) did not begin to run until the 90-day window for filing a certiorari petition with the United States Supreme Court expired).  The limitations period began to run one day later, on January 16, 2014, and expired one year later, on January 16, 2015, absent tolling. *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (holding that Federal Rule of Civil Procedure 6(a)(1) applies to calculation of AEDPA's one-year limitations period; thus, the limitations period begins to run from the day after the day of the event that triggers the period); *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (holding that the limitations period should be calculated according to the "anniversary method," whereby the limitations period expires on the one-year anniversary of the date it began to run).

Petitioner's state habeas petition was filed 312 days after the limitations period began to run.  That petition was pending, and statutorily tolled the limitations period, from November 24, 2014, (the date it was filed) until the 15-day period to file a motion for rehearing expired.  *See* Doc. 22, Ex. D (copy of First DCA's opinion including the statement, "NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED"); *see also Carey v. Saffold*, 536 U.S. 214, 219-20 (2002) (holding that a properly filed state

application for collateral review is "pending" within the meaning of 28 U.S.C. § 2244(d)(2), "as long as the ordinary state collateral review process is 'in continuance' i.e., 'until the completion of' that process."); *Wade v. Battle*, 379 F.3d 1254, 1262 (11th Cir. 2004) (concluding that Georgia prisoner's state habeas petition remained pending for AEDPA purposes until Georgia's 30-day deadline for filing an application for review with the Georgia Supreme Court expired); Fla. R. App. P. 9.330(a) ("A motion for rehearing . . . may be filed within 15 days of an order or within such other time set by the court."). The First DCA denied petitioner's habeas petition on December 10, 2014; therefore, under Florida law he had until December 26, 2014,[1] to file a motion for rehearing. Petitioner did not do so. Accordingly, his state habeas petition remained pending for AEDPA purposes until December 26, 2014.

Petitioner's federal clock began running again on December 27, 2014, and expired 53 days later on February 17, 2015. Petitioner's original and first amended Rule 3.850 motions filed on February 12, 2015, and July 24, 2015, respectively, did not toll the limitations period under § 2244(d)(2), because they did not contain the

---

[1] Although the 15-day period expired on December 25, 2014, petitioner had until December 26, 2014, to file a motion for rehearing, because December 25, 2014, was a legal holiday. *See* Fla. R. Jud. Admin. 2.514(a)(1) (providing that in circumstances like those here, where the last day of a specified time period stated in days falls on a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday).

written oath required by Florida law and therefore were not "properly filed". *See* Fla. R. Crim. P. 3.850(c); Fla. R. Crim. P. 987(1); *Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000) (holding that a Rule 3.850 motion that fails to contain the written oath required by Florida law, and that is stricken or dismissed by the state court without prejudice with leave to amend, is not "properly filed" for purposes of § 2244(d)(2) and does not toll the federal habeas limitations period). An additional reason petitioner's July 24, 2015, amended Rule 3.850 motion did not statutorily toll the limitations period is because it was filed after petitioner's federal filing period expired. *See Alexander v. Sec'y, Dep't of Corr.*, 523 F.3d 1291, 1294 (11th Cir. 2008) (holding that a state court application for postconviction or other collateral review cannot toll the limitations period if that period has already expired); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

Although petitioner's second amended Rule 3.850 motion filed on February 3, 2016, contained the requisite oath, it was filed after the federal limitations period expired, so it does not qualify for statutory tolling under § 2244(d)(2). *See Alexander, supra*; *see also Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) (holding that where state prisoner attempted to file postconviction motions in state

court after AEDPA limitations period expired, those attempted filings could toll the limitations period because "once a deadline has expired, there is nothing left to toll."). Petitioner's second amended motion could not resurrect AEDPA's expired limitations period by purporting to relate back to petitioner's original February 12, 2015, postconviction motion, because the original motion, itself, was insufficient to toll the limitations period. *See Sibley*, 377 F.3d at 1204 (stating that a federal habeas petitioner "may not attempt to resurrect a terminated statute of limitations by subsequently filing documents that purport to 'relate back' to previously submitted documents that were, in themselves, insufficient to toll the statute."); *Melson v. Allen*, 548 F.3d 993, 997-98 (11th Cir. 2008) (relying on *Sibley* to hold that an Alabama prisoner's amended state postconviction petition, which was filed after AEDPA's limitations period expired, did not relate back to a previously submitted petition that was filed prior to the deadline but dismissed by the state court for lack of verification), *vacated on other grounds*, 561 U.S. 1001 (2010);[2] *see also, e.g., Jones v. Sec'y, Fla. Dep't of Corr.*, 499 F. App'x 945, 950-52 (11th Cir. 2012) (relying on *Sibley* and *Melson* to hold that Florida prisoner's amended Rule 3.850

---

[2]Although *Melson* is no longer binding due to its vacatur by the Supreme Court, *see Melson v. Allen*, 561 U.S. 1001 (2010), that decision is still pertinent, given that it was vacated on grounds unrelated to the issue at hand. *See Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1578 n. 7 (11th Cir. 1994) (stating that an opinion vacated on unrelated grounds in a petition for rehearing had persuasive value).

postconviction motion which corrected verification deficiency but was filed after AEDPA limitations period expired could not resurrect the expired limitations period by purporting to relate back to the date of the original motion).

Petitioner's federal habeas petition, filed on July 31, 2017, is untimely by over five years. Petitioner does not dispute his petition is untimely, but argues he is entitled to equitable tolling for an unspecified period of days due to his postconviction counsel's bad faith and abandonment. (Doc. 1, pp. 29-48; Doc. 28, pp. 1-9).[3]

Equitable Tolling

A federal habeas petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" of his federal habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks and citation omitted). "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner." *San Martin*, 633 F.3d at 1268 (*citing Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002)). Petitioner must allege more than conclusory allegations, *San Martin*, 633 F.3d at 1268, and must "show a causal connection between the alleged

---

[3] Citation to page numbers of petitioner's pleadings are to the numbers he assigned.

extraordinary circumstances and the late filing of the federal habeas petition." *Id*. at 1267. Decisions regarding equitable tolling "must be made 'on a case-by-case basis' in light of 'specific circumstances, often hard to predict in advance,' although [courts] 'can and do draw upon decisions made in other similar cases for guidance.'" *Hutchinson v. Florida*, 677 F.3d 1097, 1098 (11th Cir. 2012) (*quoting Holland*, 560 U.S. at 650).

"The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (quotations omitted). In *Holland*, the Supreme Court held that the district court erred in finding a lack of diligence, where the petitioner not only wrote his attorney numerous letters seeking crucial information and providing direction, he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have his attorney – the central impediment to the pursuit of his legal remedy – removed from his case. Additionally, the very day the petitioner discovered his AEDPA clock expired due to his attorney's failings, he prepared his own habeas petition *pro se* and promptly filed it with the district court.

The most recent binding precedent defining "the appropriate standard for gauging when attorney error amounts to an extraordinary circumstance" is *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1221 (11th Cir. 2017). In *Cadet*, the court held

that "attorney negligence, even gross or egregious negligence, does not by itself qualify as an 'extraordinary circumstance' for purposes of equitable tolling; either abandonment of the attorney-client relationship . . . <u>or</u> some other professional misconduct <u>or</u> some other extraordinary circumstance is required." *Id.* at 1227 (footnote omitted) (emphasis in original) (discussing *Lawrence v. Florida*, 549 U.S. 327 (2007), *Holland, supra*, *and Maples v. Thomas*, 565 U.S. 266 (2012)). The court in *Cadet* explained: "while a petitioner is bound by his attorney's negligent mistakes, he is not bound by the actions or inactions of an attorney occurring after the attorney has severed the principle-agent relationship by abandoning his client." *Id.* at 1227 (*citing Maples*, 565 U.S. at 280-81). Abandonment "[is] illustrated by not keeping a client updated on essential developments, not responding to a client's questions or concerns, and severing communication with a client". *Brown v. Sec'y, Dep't of Corr.*, — F. App'x —, 2018 WL 4932715, at *12 (11th Cir. Oct. 11, 2018) (*citing Cadet* at 1234). Other examples of qualifying attorney misconduct include, but are not limited to, "bad faith, dishonesty, divided loyalty, and mental impairment." *Cadet* at 1236. "In considering whether the conduct of counsel was extraordinary, we will not dissect the continuing course of conduct in which counsel engaged, but rather view counsel's behavior as a whole." *Downs*, 520 F.3d at 1323.

Petitioner's equitable tolling argument fails on both prongs of the *Holland* standard.  Concerning *Holland*'s first prong, petitioner's allegations and exhibits establish that his postconviction counsel's conduct, viewed as a whole, does not suggest abandonment or any other form of serious misconduct rising to the level of an "extraordinary circumstance".

Petitioner alleges the following to support his equitable tolling claim: (1) he tasked his sister with finding and paying for an attorney who would contact petitioner personally and promise to file a Rule 3.850 motion in time to preserve petitioner's one-year federal habeas filing deadline; (2) after all but 90 days of petitioner's federal filing deadline passed, petitioner's sister found attorney David Jay Bernstein; (3) Attorney Bernstein called petitioner and orally agreed to file a Rule 3.850 motion before petitioner's federal filing deadline expired; (4) on October 13, 2014, petitioner formally retained Attorney Bernstein to file a Rule 3.850 motion; (5) petitioner wrote Bernstein on October 24, 2014, and November 18, 2014, asking why Bernstein had not contacted him or his family; (6) Bernstein did not respond to petitioner's letters and instead filed a state habeas petition on November 24, 2014; (6) petitioner wrote Bernstein on December 5, 2014, inquiring about the status of the state habeas petition and asking Bernstein to call him; (7) on December 16, 2014, petitioner wrote Bernstein and told him his lack of communication was

unprofessional; (8) on January 19, 2015, petitioner wrote Bernstein threatening to file a Florida State Bar Association complaint against him; (9) on February 11, 2015, Bernstein filed petitioner's original Rule 3.850 motion; (10) Bernstein did not send petitioner a copy of the Rule 3.850 motion until March 20, 2015; (11) on March 27, 2015, petitioner wrote Bernstein "inquiring of the status of 9.141 because he was unsure and under the impression that 9.141 might have got denied due to 3.850 being filed", but Bernstein did not respond to the letter; (12) on July 31, 2015, Bernstein's office mailed petitioner an amended Rule 3.850 motion and instructed petitioner to sign the oath and return it to Bernstein's office; (13) petitioner returned the signed oath on August 4, 2015; (14) petitioner's next correspondence with Bernstein was when Bernstein wrote him on June 28, 2016, to inform him that his Rule 3.850 motion was denied and Bernstein's representation was concluded; (15) on April 5, 2017, and April 21, 2017, petitioner wrote Bernstein to inquire about the status of the state habeas petition; and (16) Bernstein responded to petitioner's letters on April 28, 2017, informing petitioner of all relevant dates, including documentation. (Doc. 1, pp. 31-39; Doc. 28). Petitioner attaches various documents to support his allegations, including his retainer agreement with Bernstein (doc. 1, Ex. A); affidavits from himself and his sister (doc. 1, Ex. B); various letters between himself

and Bernstein (doc. 1, Exs. E, F, G, J, L); and correspondence with the First DCA's clerk of court (doc. 1, Exs. H, I).

Petitioner's documentary evidence establishes that Attorney Bernstein signed the retainer agreement on October 13, 2014. (Doc. 1, Ex. A). Bernstein's obligation under the retainer agreement was "to research, prepare, and file a 3850 Motion; reply to any government answer; and file objection to magistrate judge's Report and Recommendation if necessary." (*Id.*). The retainer agreement included a "Representations" clause providing:

> It is expressly agreed and understood that no promises or guarantees as to the outcome of The Firm's representation have been made to client by The Firm. It is further expressly understood and agreed that no other representations have been made to Client, except for those set out in this Agreement.

(*Id.*). The retainer agreement also included a clause titled "Prior Agreement superseded", which confirmed: "This Agreement constitutes the sole and only agreement by and between the parties. It supersedes any prior understandings or written oral agreements between the parties concerning the subject matter discussed herein." (*Id.*).

A month after signing the retainer agreement, Bernstein filed petitioner's state habeas petition (on November 24, 2014), and mailed petitioner a copy of the pleading on December 4, 2014. (Doc. 1, p. 34 and Ex. C). Petitioner suggests

Bernstein acted in "bad faith" by filing the state habeas petition instead of a Rule 3.850 motion, because the former was beyond the scope of the retainer agreement. Bad faith, however, "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity". *Bad Faith*, <u>Black's Law Dictionary</u> (6th ed. 1990). Petitioner was not "wronged" by Bernstein's filing the state habeas petition; rather, he benefitted from the filing because it tolled his federal limitations clock for an additional 30 days.

After the state habeas petition was denied on December 10, 2014, Bernstein prepared and filed petitioner's original Rule 3.850 motion on February 12, 2015, prior to petitioner's AEDPA clock expiring. Bernstein provided petitioner with a copy of the pleading on March 20, 2015. (Doc. 1, p. 36). On July 24, 2015, Bernstein filed an amended Rule 3.850 motion adding an additional ground for relief. (Doc. 22, Ex. E, pp. 25-52). After the state circuit court dismissed the original and amended motions on July 24, 2015, for lack of proper verification (doc. 22, Ex. E, pp. 53-54), Bernstein mailed petitioner the documents necessary for proper verification within one week (on July 31, 2015). (Doc. 1, Ex. E). Petitioner signed and returned the verification to Bernstein's office on August 4, 2015. (Doc. 22, Ex. E, p. 75). Bernstein was out of the office from July 31, 2015, to August 10, 2015, due to his father's death. (Doc. 22, Ex. E, pp. 55-56, ¶¶ 6, 7). Bernstein explains:

> Undersigned arrived back from New York on August 10, 2015, and began the tedious task of catching up with the numerous matters awaiting my return. The defendant's executed oath inadvertently did not reach my desk.
>
> It was thereafter brought to undersigned's attention, due to a phone call from the defendant requesting a status update on his motion, that the amended motion was never, in fact, filed with th[e] Court.

(Doc. 22, Ex. E, p. 56, ¶¶ 7-8). Bernstein "immediately" contacted the Assistant State Attorney and obtained not only the State's consent to an extension of time for petitioner to file his verified Rule. 3.850 motion, but also the State's waiver of any state-law limitations defense to the late filing. (Doc. 22, Ex. E, p. 56). The state circuit court granted the extension of time and considered petitioner's second amended Rule 3.850 motion timely filed. (Ex. E, p. 92). After the state court denied relief on the merits on June 20, 2016, (Ex. E, pp. 93-233), Bernstein wrote petitioner on June 28, 2016, advising him of the denial of his postconviction motion. (Doc. 1, Ex. F). Bernstein also advised petitioner that he could not identify any good-faith basis to appeal, but told petitioner of his right to appeal *pro se*. (*Id.*). Bernstein then informed petitioner that "this letter will mark the end of this firm's representation of you in this matter." (*Id.*). Bernstein mailed petitioner all relevant documents. (Doc. 1, Ex. G). Ten months after Bernstein's representation concluded, petitioner wrote Bernstein on April 21, 2017, seeking Bernstein's assistance in determining his federal filing deadline. (Doc. 1, Ex. L, Pet'r's Notice, April 21, 2017). Bernstein

responded on April 28, 2017, providing petitioner detailed information about his case, including relevant filing dates and deadlines. (Doc. 1, Ex. J). Petitioner filed his federal habeas petition three months later, on July 31, 2017.

Petitioner's allegations and supporting documents show that Bernstein did not abandon petitioner. Bernstein frequently communicated with petitioner and filed necessary pleadings on his behalf throughout his representation. Bernstein made two errors – failing to have petitioner sign and properly verify the original Rule 3.850 motion in February 2015, and failing to discover that petitioner returned the signed verification in August 2015. These errors, however, amount to simple negligence or excusable neglect, not abandonment, bad faith, dishonesty or other misconduct rising to the level of an "extraordinary circumstance". *See, e.g., Jones*, 499 F. App'x at 952 (holding that petitioner was not entitled to equitable tolling due to attorney's failure to have petitioner sign and properly verify the state postconviction motion before filing it – that kind of error was "simple negligence"); *Holland*, 560 U.S. at 652 ("[A] garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling.").

Petitioner's equitable tolling argument relies heavily on a third alleged error by counsel – Bernstein's failure to promptly notify petitioner that his state habeas petition was denied in December 2014. Even assuming petitioner can prove this

allegation, this error, viewed in the context of counsel's conduct as a whole, suggests negligence, not serious attorney misconduct as that concept has developed in *Lawrence*, *Holland*, *Maples* and *Cadet*. Moreover, petitioner must still show that Bernstein's error prevented him from timely filing his federal petition despite his own diligent effort. Petitioner cannot make that showing. Petitioner admits that when Bernstein mailed him a copy of the original Rule 3.850 motion in March 2015, he (petitioner) "was under the impression that 9.141 [state habeas petition] might have got denied due to 3.850 being filed." (Doc. 1, p. 36). Petitioner also admits receiving Bernstein's June 28, 2016, letter notifying him that the denial of petitioner's Rule 3.850 motion "mark[ed] the end of [Bernstein's] representation". (Doc. 1, p. 37 and Ex. F). In correspondence nine months later, petitioner again confirmed: "I always assumed it [the state habeas petition] got denied because you filed my 3850." (Doc. 1, Ex. L (Pet'r's Letter to Bernstein, April 21, 2017)). These allegations belie petitioner's assertion that he "could not reasonably be expected to have filed his federal habeas petition, while under impression that his 9.141 petition was still active." (Doc. 1, p. 39).

A reasonably diligent prisoner who suspected, as petitioner did, that counsel forgot to notify him of an important dispositive order, and who had all the case information necessary to make an inquiry himself with the clerk of court, would have

Case 1:17-cv-00198-MW-CJK   Document 29   Filed 11/06/18   Page 19 of 22

made that effort far prior to the time petitioner did. Petitioner waited over two years – until May 15, 2017 – to contact the First DCA to confirm his suspicion. (Doc. 1, Ex. H). Moreover, once Bernstein confirmed to petitioner in his April 28, 2017, letter (doc. 1, Ex. J) that the state habeas petition was denied on December 10, 2014, and that petitioner's federal habeas limitations period expired in early 2015, petitioner inexplicably waited another 2½ months, until July 31, 2017, to file his federal petition.[4] That is not reasonable diligence, especially since all of petitioner's grounds for federal habeas relief are reiterations of the grounds presented in his counseled direct appeal and postconviction proceedings. (Doc. 1, pp. 7-26 (federal petition); Doc. 22, Ex. E, pp. 55-91 (second amended Rule 3.850 motion)).

Thus, although petitioner requests an evidentiary hearing on the issue of equitable tolling, (doc. 28), a hearing would serve no useful purpose because the specific, non-conclusory facts and documents he proffers, even if true, are not enough to make his petition timely under § 2244(d). *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060-61 (11th Cir. 2011) (affirming denial of evidentiary hearing on equitable tolling claim based on well settled standard that "if a habeas petition does not allege enough specific facts that, if they were true, would warrant

---

[4] Petitioner apparently received Bernstein's April 28, 2017, letter on May 16, 2017. (Doc. 1, Ex. J).

relief, the petitioner is not entitled to an evidentiary hearing." (*citing Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 763 (11th Cir. 2010))). Petitioner cannot establish that he pursued his federal rights diligently; that Attorney Bernstein engaged in serious attorney misconduct qualifying as an "extraordinary circumstance"; and that Bernstein's conduct "stood in [petitioner's] way and prevented timely filing" of the federal petition. *Holland*, 560 U.S. at 649. Petitioner's untimely petition should be dismissed.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason

could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S. at 327).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). The petitioner here cannot make the requisite showing.  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That respondent's motion to dismiss (doc. 22) be GRANTED.

2.  That the petition for writ of habeas corpus (doc. 1), challenging petitioner's judgment of conviction and sentence in *State of Florida v. Lionel L. Robinson*, Alachua County Circuit Court Case No. 2010-CF-4836, be DISMISSED WITH PREJUDICE.

3.  That the clerk be directed to close the file.

4.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 6th day of November, 2018.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.